UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CASPIAN INVESTMENT, LLC, a Utah limited liability company; and MAXIM'S NUTRICARE INCORPORATED, a Utah corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS BAKING CO. OF UTAH, LLC f/k/a ONYX ACQUISITION SUB, LLC, a Utah limited liability company; and FLOWERS FOODS, INC., a Georgia corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER LIMITING THE SCOPE AND DURATION OF THE DEPOSITION OF RYALS MCMULLIAN (DOC. NO. 38)**<br><br>Case No. 2:24-cv-00081<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

In this contract dispute, Flowers Baking Co. of Utah, LLC and Flowers Foods, Inc. (the Flowers Defendants) move to limit the deposition of Flowers Foods' CEO, Ryals McMullian, under the "apex" doctrine.[1] They seek to limit both time and topic—restricting Mr. McMullian's deposition to one hour regarding "Mr. McMullian's direct interactions with Mr. Mohebbizadeh" (Plaintiffs' principal officer).[2] Plaintiffs Caspian Investment, LLC and Maxim's Nutricare Incorporated oppose the motion, arguing Mr.

---

[1] (Short Form Mot. for a Protective Order Limiting the Scope and Duration of the Dep. of Ryals McMullian (Mot.), Doc. No. 38.)

[2] (*Id.* at 3.)

McMullian had broader personal involvement in the events at issue.[3] The court permitted supplemental briefing and exhibits and held a hearing.[4] As explained at the hearing and below, where the Flowers Defendants have not demonstrated any apex doctrine factors apply, nor have they otherwise shown good cause for a protective order, the motion to limit Mr. McMullian's deposition is denied.

## BACKGROUND

This dispute arises from a contract for Flowers Food, Inc. to purchase Papa Pita Bakery, a Utah wholesaler.[5] According to the Flowers Defendants, after entering into a purchase agreement, they learned Papa Pita was noncompliant with laws and permits governing emissions of volatile organic compounds.[6] The parties negotiated an amendment to the purchase agreement and a "side letter," in which Plaintiffs agreed to work with the Utah Division of Air Quality to resolve any noncompliance.[7] After the Flowers Defendants alleged Plaintiffs breached these agreements, Plaintiffs filed this

---

[3] (See Opp'n to Short Form Mot. for a Protective Order Limiting the Scope and Duration of the Dep. of Ryals McMullian (Opp'n), Doc. No. 39.)

[4] (See Reply, Doc. No. 41; Notice Re: Exs., Doc. No. 42; Min. Entry, Doc. No. 46.)

[5] (See Compl., Doc. No. 2.) Papa Pita is owned by Plaintiff Maxims Nutricare, with real property and a manufacturing facility owned by Plaintiff Caspian Investment. (Id. ¶ 17.)

[6] (Answer & Countercls. 25, ¶¶ 3–4, Doc. No. 7; see also Compl. ¶¶ 63–71, Doc. No. 2 (acknowledging its emissions "may have" exceeded the regulatory threshold due to miscalculations at its facility).)

[7] (Compl. ¶¶ 54–55, Doc. No. 2.)

lawsuit for declaratory judgment and breach of contract.[8]  The Flowers Defendants counterclaimed for breach of contract and specific performance.[9]

It is undisputed that CEO Ryals McMullian personally participated in negotiating the purchase agreement, amendment, and side letter on behalf of the Flowers Defendants, including through one-on-one phone calls with Mr. Mohebbizadeh (Plaintiffs' principal).[10]  In their initial disclosures, the Flowers Defendants identified Mr. McMullian as a person "likely to have discoverable information that Defendants may use to support their claims and anticipated defenses."[11]  Specifically, they stated Mr. McMullian "is likely to have information regarding the negotiation of the Purchase Agreement, Amendment, and Side Letter Agreement."[12]  But after the Plaintiffs served a deposition notice for Mr. McMullian, the Flowers Defendants filed this motion seeking to limit the duration and subject matter of the deposition under Rule 26(c)(1) of the Federal Rules of Civil Procedure and the apex doctrine.[13]

---

[8] (*Id.* ¶¶ 87, 114–159.)

[9] (Answer & Countercls. 41–46, ¶¶ 99–136, Doc. No. 7.)

[10] (*See* Mot. 3, Doc. No. 38; Opp'n, Doc. No. 39.)

[11] (Ex. A to Reply, Defs.' Rule 26(a)(1) Initial Disclosures & Attach. A, Doc. No. 41-1 at 3–4, 8.)  Because this exhibit contains multiple sets of internal numbering, the page numbers cited here refer to the CM/ECF pagination.

[12] (*Id.* at 8.)

[13] (Mot., Doc. No. 38.)

## LEGAL STANDARDS

Rule 26(c) of the Federal Rules of Civil Procedure permits the court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[14] Under Rule 26(b), the scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[15]

The apex doctrine allows a court to protect a high-level corporate executive from the burdens of a deposition when any of the following circumstances exist:

> (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company.[16]

"[T]he party seeking to depose an executive bears an initial burden of making some showing that the executive has unique personal knowledge of some relevant issues."[17] "Upon such a showing, the burden shifts to the executive to demonstrate by evidence that he in fact has no unique personal knowledge or that there exists one of

---

[14] Fed. R. Civ. P. 26(c)(1).

[15] Fed. R. Civ. P. 26(b)(1).

[16] *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528, 2011 U.S. Dist. LEXIS 68940, at *3 (D. Colo. June 27, 2011) (unpublished).

[17] *Id.* at *4 (internal quotation marks omitted).

4

the other three circumstances under which requiring him to sit for a deposition is inappropriate."[18]

## ANALYSIS

It is undisputed that Mr. McMullian has at least some unique personal knowledge of relevant issues. But the parties dispute the scope of this knowledge. The Flowers Defendants argue Mr. McMullian's unique knowledge is limited to "a small number of conversations that occurred directly between Mr. McMullian and [Mr.] Mohebbizadeh."[19] They contend Mr. McMullian's deposition should be limited to those conversations, which "can reasonably be fully covered in no longer than an hour."[20]

Plaintiffs, on the other hand, contend Mr. McMullian's knowledge is broader. They point to the Flowers Defendants' initial disclosures identifying Mr. McMullian as a person with knowledge of the parties' negotiations, and to letters and emails to and from Mr. McMullian regarding the parties' agreements.[21] They also contend the Flowers' Defendants' Rule 30(b)(6) representative was unable to testify about the parties' negotiations.[22]

The Flowers Defendants have not shown a basis to limit Mr. McMullian's deposition. Where it is undisputed Mr. McMullian has unique knowledge of relevant

---

[18] *Id.*

[19] (Mot. 3, Doc. No. 38.)

[20] (*Id.*)

[21] (*See* Opp'n 1, Doc. No. 39; Notice Re: Exs., Doc. No. 42.)

[22] (*See* Opp'n 2, Doc. No. 39.)

issues, the Flowers Defendants have the burden to show the information sought can be obtained through another witness or discovery method, or the deposition would be a severe hardship for Mr. McMullian. They have not met their burden.

While conceding Mr. McMullian has some unique knowledge of the matter in dispute, the Flowers Defendants ask for deposition limits. Specifically, they ask the court to restrict the deposition's subject matter to the areas of unique knowledge, and they assert one hour is sufficient to cover those areas. But even assuming the apex doctrine enables such limitations, neither subject matter nor durational limitations are appropriate here.[23]

At the outset, the Flowers Defendants' characterization of Mr. McMullian's unique knowledge—as limited to direct conversations with Mr. Mohebbizadeh—is too narrow. In their initial disclosures, the Flowers Defendants themselves identified Mr. McMullian as having "information regarding the negotiation of the Purchase Agreement, Amendment, and Side Letter Agreement"—the three contracts at issue in this case.[24] Notably, other than Mr. Mohebbizadeh, the Flowers Defendants identified no other

---

[23] In support of their request for subject matter limitations, the Flowers Defendants cite *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259 (N.D. Cal. 2012), and *Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661 (D.N.M. 2005). Although the *Apple* court observed that "evidence suggesting unique knowledge is insufficient to warrant unrestricted deposition time and subject matter," it ultimately imposed only durational limitations. 282 F.R.D. at 265, 267–69. And while the *Morales* court limited both the scope and duration of an executive's deposition under the apex doctrine, the permitted scope encompassed the areas sought by the party requesting the deposition. 229 F.R.D. at 663.

[24] (Ex. A to Reply, Defs.' Rule 26(a)(1) Initial Disclosures & Attach. A, Doc. No. 41-1 at 8.)

individuals as having knowledge of this topic.[25]  The record also shows Mr. McMullian signed a letter of intent regarding the purchase of Papa Pita Bakery;[26] authored internal and external emails regarding the parties' contracts, negotiations, and the emissions issue;[27] and signed the actual contracts.[28]  In other words, Mr. McMullian was directly, personally involved in the matters at the heart of this dispute, beyond his mere oral conversations with Mr. Mohebbizedeh.

Under the second and third apex factors, the Flowers Defendants have not shown the information sought from Mr. McMullian can be obtained from another witness or an alternative discovery method.  As noted, in their initial disclosures, the Flowers Defendants identify no other officer or employee with knowledge of the parties' negotiations.  And in their Rule 30(b)(6) deposition, the Flowers Defendants testified the only people involved in the negotiations on their side were Mr. McMullian and their attorneys.[29]  The Rule 30(b)(6) representative also testified she had not communicated with Mr. McMullian regarding his knowledge of the negotiations or the contracts at issue

---

[25] (See id. at 7–9.)

[26] (Pls.' Ex. 2, Doc. No. 44-1 (sealed).)

[27] (Pls.' Exs. 3 & 6 Doc. Nos. 42-2 & 42-3; Pls.' Ex. 10, Doc. No. 44-6 (sealed).)

[28] (Pls.' Exs. 7, 11, & 12, Doc. Nos. 44-4, 44-7, & 44-8 (sealed).)

[29] (Pls.' Ex. 14, Rule 30(b)(6) Dep. 20:22–21:14, Doc. No. 44-10 (sealed).)  Specifically, their representative testified the attorneys involved were in-house counsel and outside counsel from the firm now representing the Flowers Defendants in this case.  (Id.)

to prepare for the deposition.[30] In other words, apart from attorneys, Mr. McMullian was the only person on the Flowers Defendants' side with direct knowledge of the parties' negotiations. And the Rule 30(b)(6) representative was unprepared to testify about what Mr. McMullian knew. At the hearing, the Flowers Defendants suggested other employees participated in the negotiations, but they failed to identify these witnesses in their briefing (despite being permitted to file a reply). And this assertion runs counter to their own Rule 30(b)(6) testimony about who took part in the negotiations. Further, the Flowers Defendants do not identify any alternative discovery method by which Plaintiffs could obtain this information.

Under the fourth apex factor, the Flowers Defendants have not shown sitting for a full, unrestricted deposition would cause a severe hardship for Mr. McMullian or Flowers Foods. They note Flowers Foods is the "second-largest producer and marketer of packaged bakery foods in the United States," and a publicly-traded corporation.[31] But they offer no evidence of a specific burden imposed by an unrestricted deposition. Moreover, at the hearing, Plaintiffs represented that they would depose Mr. McMullian where he is located and make efforts to accommodate his schedule. Under these

---

[30] (*Id.* at 23:1–25, 30:24–31:7, 33:22–34:2, 44:14–20; 163:2–18; 189:6–9.) The Rule 30(b)(6) representative also testified Mr. McMullian decided to proceed with a public announcement regarding the acquisition even though the environmental report had not been completed—and she did not ask him why he made this decision. (*Id.* at 153:3–11.)

[31] (Mot. 2, Doc. No. 38; Reply 2, Doc. No. 41.)

circumstances, the Flowers Defendants have not shown the deposition will cause severe hardship.

In sum, the Flowers Defendants have not demonstrated the apex doctrine should be applied to limit Mr. McMullian's deposition. And they have not shown any other basis for a protective order under Rule 26(c)(1).[32] There is no good cause to restrict Mr. McMullian's deposition under this rule, particularly where the Flowers Defendants themselves identified Mr. McMullian as a witness with information on matters central to this case.[33] Accordingly, the motion for a protective order is denied. Mr. McMullian's deposition shall be governed by the ordinary limitations in Rule 30.[34]

---

[32] *See* Fed. R. Civ. P. 26(c)(1) (permitting a court to issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense").

[33] *See Cvent Inc. v. RainFocus*, No. 2:17-cv-00230, 2020 U.S. Dist. LEXIS 218275, at *4 (D. Utah Nov. 20, 2020) (unpublished) (denying a motion to prohibit a CEO's deposition under the apex doctrine, noting "[t]he fact that RainFocus identified [its CEO] as a witness demonstrates a willingness to have him testify"); *United Auto. Ins. v. Stucki & Rencher, LLC*, No. 2:15-cv-00834, 2019 U.S. Dist. LEXIS 81280, at *20 (D. Utah May 13, 2019) (unpublished) ("Plaintiff cannot simultaneously seek to shield [its CEO] from a deposition because he has no unique knowledge, while holding him in reserve as a rebuttal witness based on his knowledge. Under either Rule 26(c) or the apex doctrine such contradictory positions would not be permitted.").

[34] *See* Fed. R. Civ. P. 30.

## CONCLUSION

The Flowers Defendants' motion[35] to limit Mr. McMullian's deposition is denied.

DATED this 24th day of October, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[35] (Doc. No. 38.)